IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**BRENDA COX**                                                                                                  PLAINTIFF

v.                              Case No. 3:24-CV-00015-DPM

**BOARD OF TRUSTEES OF
THE UNIVERSITY OF ARKANSAS**                                                       DEFENDANT

## ORIGINAL COMPLAINT

COMES NOW Brenda Cox, by and through her attorney Chris Burks of WH LAW, for her Original Complaint against the Board of Trustees of the University of Arkansas, she does hereby state and allege as follows:

*This case assigned to District Judge Marshall and to Magistrate Judge Ervin*

### I. PRELIMINARY STATEMENTS

1. Plaintiff brings this action against the Defendant for violation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S. Code § 2000(e)2 ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S. Code § 623, and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101, et seq. ("ACRA") for declaratory judgment, monetary damages, liquidated damages, prejudgment interest, and costs, including reasonable attorneys' fees, as a result of Defendant's discriminatory actions toward Plaintiff, resulting in her constructive termination.

2. Plaintiff received inequitable treatment and a workplace that was hostile toward her on the basis of her age, which is 53; her sex, which is female; and in retaliation for complaints about this treatment.

3. Upon information and belief, Defendant has willfully and intentionally committed violations of Title VII, ADEA, and ACRA, as described, *infra*.

## II. JURISDICTION AND VENUE

4. The United States District Court for the Eastern District of Arkansas has subject matter jurisdiction over this suit under the provisions of 28 U.S.C. § 1331 because this suit raises federal questions under the Title VII and the ADEA.

5. Plaintiff's claims under ACRA form part of the same case or controversy and arise out of the same facts as Title VII claims alleged in this Complaint.

6. Therefore, this Court has supplemental jurisdiction over Plaintiff's ACRA claims pursuant to 28 U.S.C. § 1367(a).

7. The acts complained of herein were committed and had their principal effect within the Northern Division of the Eastern District of Arkansas. Accordingly, venue is proper within this District pursuant to 28 U.S.C. § 1391.

8. Defendant does business in this District and a substantial part of the events alleged herein occurred in this District.

9. The witnesses to Title VII, ADEA, and ACRA violations alleged in this Complaint reside in this District.

## III. THE PARTIES

10. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

11. Plaintiff is a resident and citizen of Poinsett County, Arkansas.

12. Plaintiff Brenda Cox was hired by Defendant in June 2022.

13. Plaintiff's last title was Family and Consumer Science Agent.

14. Plaintiff was constructively terminated from her employment with Defendant on June 21, 2023.

15. At all material times, Plaintiff has been entitled to the rights, protection, and benefits provided under Title VII, ADEA, and ACRA.

16. Defendant the Board of Trustees for the University of Arkansas are the corporate and body politic which governs, manages, and controls the University of Arkansas System, per A.C.A. § 6-64-202.

17. Defendant Board of Trustees for the University of Arkansas is an "employer" within the meanings set forth in Title VII, ADEA, and ACRA, and was, at all times relevant to the allegations in this Complaint, Plaintiff's employer.

## IV. FACTUAL ALLEGATIONS

18. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

19. During her employment, Plaintiff was subject to disparate treatment as the result of her age, which is 53, and her sex, which is female. After making complaints about this treatment, Plaintiff was retaliated against by Defendant.

20. The harassment Plaintiff experienced was so severe, pervasive, and shocking that it made her workplace hostile to her, and as a result, Plaintiff could not reasonably continue her employment.

21. Plaintiff was constructively terminated on July 14, 2023.

22. Plaintiff was employed as a Family and Consumer Science Agent in the University of Arkansas Division of Agriculture Poinsett County Extension Office.

23. Plaintiff's supervisor was Craig Allen, the Staff Chairman at the Poinsett County Extension Office.

24. Jeffrey Works was a similarly situated male employee who also worked as an agent in the Poinsett County Extension Office.

25. During her employment, Plaintiff observed Works and other employees being allowed to flex their time by leaving early or coming in late, and other employees being allowed to work from home.

26. On Saturday, March 4, 2023, Plaintiff travelled to Jonesboro to present a ten-hour training session with two other agents employed by Defendant.

27. Prior to this, on March 2, 2023, Plaintiff spoke with Craig Allen and asked if she could take off March 10, 2023, since she was spending Saturday, her day off, traveling to and from Jonesboro and presenting an extensive training session. Plaintiff explained that, as a result, she was working 55 hours that week.

28. Allen informed Plaintiff that working outside the normal work day or work week was an expected part of her job duties, and that she should just "suck it up" and work the extra time.

29. Works, Plaintiff's similarly situated younger male coworker, regularly came in late, took extended lunch breaks, left early, conducted his personal business on the phone during the work day, and left on personal appointments throughout the work day.

30. Works stated to Plaintiff that he regularly left early from September through November to participate in an urban deer hunt. Works stated to Plaintiff that during his first year

of employment, he came in late and took a nap at his desk during work hours because he had gone duck hunting prior to coming into work.

31. Plaintiff observed other employees being allowed to work from home when they were sick and being allowed to come in late or leave early to attend personal appointments.

32. When Plaintiff asked for similar flexibility with her time after working 55 hours in a workweek, Allen refused to allow Plaintiff this flexibility, and continued to require Plaintiff to work overtime on weekends to present trainings.

33. Plaintiff was regularly required to complete tasks that Works, a similarly situated younger male coworker, did not complete, which caused Plaintiff significant stress and required her to work longer hours than Works to complete her own tasks.

34. Allen regularly complained to Plaintiff and to his administrative assistant about Works' poor performance, yet Plaintiff did not observe any efforts being made to correct these issues, and Works' performance and attendance did not change.

35. Plaintiff regularly worked 42-45 hours a week, and she was a high performer. During her employment, Plaintiff worked to create new curriculum for a state-wide diabetes education program, worked as one of two food preservation specialists in her district, conducted numerous workshops, worked extensively in community outreach, organized an inaugural Ag Day event for students in Poinsett County in October 2022, volunteered for additional training and certification opportunities, and was asked to work with another agent on a multistate collaboration.

36. Even though Plaintiff's attendance and performance was superior to Works in virtually every aspect, Plaintiff was treated worse than Works as she was not allowed to flex her time and was required to work longer hours.

37. Plaintiff also continued to have issues working under her supervisor, Allen.

38. During her employment, Plaintiff regularly heard demeaning comments from Allen that made her uncomfortable.

39. Allen regularly made comments to Plaintiff that he "hated" the female Food and Consumer Science Agent who had held Plaintiff's position previously.

40. Allen regularly told Plaintiff, "I wouldn't piss on that bitch if she were standing in the road on fire," in reference to this female former employee.

41. Plaintiff regularly observed Allen giving his female administrative assistant bear hugs and massaging her shoulders. Plaintiff observed Allen giving his female administrative assistant a handgun, buying her lunch, and bringing her coffee.

42. In late April, Allen called a male county employee a "puss" when this employee had difficulty moving furniture, which he later boasted about in Defendant's workplace.

43. Allen's repeated statements that a male county employee was a "puss," that he "hated" a female who had previously held Plaintiff's position, that this female former employee was a "bitch," and that he "wouldn't piss on [the female former employee] if she were on fire," caused Plaintiff significant distress.

44. The physical nature of Allen's relationship with his female administrative assistant, as well as the preferential treatment Allen showed to his assistant, caused Plaintiff significant distress.

45. On March 6, 2023, Plaintiff met with Jerry Clemons, Defendant's District Director for the Division of Agriculture, Delta District, to complain about the disparate treatment she was experiencing compared to Works and her issues working under Allen.

46. Clemons did not appear surprised by Plaintiff's complaints about Allen. He stated he thought Allen "had gotten better" because there hadn't been any issues recently.

47. Clemons contacted Barbara Batiste, the compliance office for the Division of Agriculture, who began investigating Plaintiff's complaint.

48. After Plaintiff reported discrimination and disparate treatment to Defendant, the treatment of Plaintiff worsened.

49. After making this complaint, Plaintiff was excluded from daily activities in her office, such as meetings with community members, subcommittee meetings, and meetings about quarterly newsletters. Plaintiff was left off emails that she had previously received.

50. As a result, Plaintiff was ostracized and isolated, to the degree that reporting to work made her anxious and distressed.

51. On May 15, 2023, Allen was speaking to a quorum court member who had visited the Defendant's office. Plaintiff approached Allen and he ignored her, refusing to introduce her or even acknowledge her presence, until Plaintiff left the room. This was humiliating and shocking to Plaintiff.

52. Plaintiff reported the worsening treatment to Batiste, Defendant's compliance officer, on June 6, 2023.

53. This treatment continued. Plaintiff had been told that Batiste was meeting with Allen about her complaint, but she was not provided any information on the status of the investigation.

54. Plaintiff saw no changes in Allen's attitude or treatment of her. On the contrary, her work environment had worsened, as Plaintiff was now being isolated and ostracized by other employees in her office as a result of the investigation.

55. On June 21, 2023, Plaintiff resigned her position, citing the ongoing hostile environment and the tension in her office, which worsened after her complaints about discrimination and disparate treatment.

56. Plaintiff's last day was July 14, 2023.

57. Plaintiff observed a younger, male similarly situated employee who was allowed to flex his hours by coming in late, taking extended lunch breaks, leaving early, conducting his personal business on the phone during the work day, and leaving on personal appointments throughout the work day.

58. Plaintiff was disparately treated as she was denied any opportunity to flex her hours by taking time off when she performed work for Defendant on her day off.

59. Plaintiff observed a younger, male similarly situated employee failing to complete his job duties, which Plaintiff was asked to complete by her supervisor.

60. Plaintiff was disparately treated as she was required to complete job duties a male coworker did not complete, which required Plaintiff to work longer hours to complete her own tasks.

61. This younger male agent held the same duties and responsibilities as Plaintiff and was similarly situated in all notable respects.

62. Plaintiff experienced discrimination based on her sex, as she was forced to hear her supervisor making harassing, offensive, and misogynistic comments, including calling a male

county employee a "puss," calling a female former employee a "bitch," and stating, "I wouldn't piss on that bitch if she were standing in the road on fire." This female former employee had previously held the same position as Plaintiff.

63. Plaintiff experienced discrimination based on her sex, as she was forced to witness her supervisor giving his female administrative assistant bear hugs, massaging her shoulders, bringing her a handgun, buying her lunch, and bringing her coffee. The relationship between Plaintiff's supervisor and his administrative assistant was physically inappropriate and preferential to the degree that it made Plaintiff uncomfortable to witness.

64. Plaintiff made complaints about discrimination and disparate treatment to Jerry Clemons, the Director for her district, and to Barbara Batiste, Defendant's compliance officer.

65. After these complaints, the treatment of Plaintiff worsened. Plaintiff was isolated, ostracized, and ignored in her office, excluded from meetings, and left off emails she previously received.

66. As a result of the ongoing sex discrimination, age discrimination, and retaliation, Plaintiff suffered such severe, shocking, and pervasive treatment that her workplace became hostile to her, and Plaintiff was unable to remain employed.

67. Plaintiff was constructively terminated on July 14, 2023.

## V. FIRST CLAIM FOR RELIEF – Title VII Claims

68. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

69. Plaintiff filed a timely charge with the EEOC, received a right to sue letter, and thus exhausted her administrative remedies.

70. Defendant engaged in unlawful employment practices at their facility in Poinsett County, Arkansas, in violation of 42 U.S. Code §2000e-2.

71. Specifically, and as detailed above, Plaintiff, who is female, was constructively terminated as a result of ongoing sexual discrimination.

72. Defendant employs male employees who were not subject to the same treatment that Plaintiff experienced during her employment.

73. Defendant employed a similarly situated male agent who was allowed to flex his hours by coming in late, taking extended lunch breaks, leaving early, conducting his personal business on the phone during the work day, and leaving on personal appointments throughout the work day.

74. Plaintiff was disparately treated as she was denied any opportunity to flex her hours by taking time off when she performed work for Defendant on her days off.

75. Defendant employed a similarly situated male agent who failed to complete his job duties, which Plaintiff was asked to complete by her supervisor.

76. Plaintiff was disparately treated as she was required to complete job duties a male coworker did not complete, which required Plaintiff to work longer hours to complete her own tasks.

77. Plaintiff observed her supervisor making misogynistic, offensive, and harassing statements about employees. Plaintiff observed her supervisor regularly hugging and massaging a female employee in their office.

78. These statements and actions by her supervisor made Plaintiff feel distressed and harassed based on her sex, which is female.

79. After making complaints about disparate treatment and harassment to numerous employees, Defendant failed to take any action to protect Plaintiff from ongoing harassment and disparate treatment.

80. Clemons, the Director of Plaintiff's District, told Plaintiff he thought Allen "had gotten better" because there hadn't been any issues recently, indicating other employees had complained about Allen in the past.

81. After Plaintiff made complaints, she was retaliated against by being isolated, ostracized, and ignored in her office, excluded from meetings, and left off emails she previously received.

82. At all relevant times, Plaintiff could perform the essential function of the position for which she was hired.

83. However, Plaintiff was constructively terminated from her position within the relevant statutory period.

84. The effect of the practices complained of above have been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex.

85. The unlawful employment practices complained of above were and are intentional.

86. The unlawful employment practices complained of above were done with reckless indifference to the federally protected rights of Plaintiff.

87. Pursuant to Title VII of the 1964 Civil Rights Act, as amended, Plaintiff is entitled to, and she seeks, an additional amount as compensatory and punitive damages equal to the sum of her lost wages or salary, benefits and/or other compensation denied or lost to her by reason of

Defendant's violations of Title VII, plus any interest she is entitled to for these causes, because Defendant's action were malicious and Defendant had no reasonable grounds for believing that its actions were not in violation of Title VII.

### VI. SECOND CLAIM FOR RELIEF – ADEA Claims

88. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

89. Plaintiff filed a timely charge with the EEOC, received a right to sue letter, and thus exhausted her administrative remedies.

90. Defendant engaged in unlawful employment practices at their facility in Poinsett County, Arkansas, in violation of the Age Discrimination in Employment Act of 1967, as amended.

91. Specifically, and as detailed above, Plaintiff, who is 53 years old, was disparately treated as a result of age discrimination.

92. Defendant employs younger employees who were not subject to the same treatment that Plaintiff experienced during her employment.

93. Defendant employed a similarly situated younger agent who was allowed to flex his hours by coming in late, taking extended lunch breaks, leaving early, conducting his personal business on the phone during the work day, and leaving on personal appointments throughout the work day.

94. Plaintiff was disparately treated as she was denied any opportunity to flex her hours by taking time off when she performed work for Defendant on her days off.

95. Defendant employed a similarly situated younger agent who failed to complete his job duties, which Plaintiff was asked to complete by her supervisor.

96. Plaintiff was disparately treated as she was required to complete job duties a younger coworker did not complete, which required Plaintiff to work longer hours to complete her own tasks.

97. After making complaints about disparate treatment and harassment to numerous employees, Defendant failed to take any action to protect Plaintiff from ongoing harassment and disparate treatment.

98. Clemons, the Director of Plaintiff's District, told Plaintiff he thought Allen "had gotten better" because there hadn't been any issues recently, indicating other employees had complained about Allen in the past.

99. After Plaintiff made complaints, she was retaliated against by being isolated, ostracized, and ignored in her office, excluded from meetings, and left off emails she previously received.

100. At all relevant times, Plaintiff could perform the essential function of the position for which she was hired.

101. However, Plaintiff was constructively terminated from her position within the relevant statutory period.

102. The effect of the practices complained of above have been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her age, which is 53.

103. The unlawful employment practices complained of above were and are intentional.

104. The unlawful employment practices complained of above were done with reckless indifference to the federally protected rights of Plaintiff.

105. Pursuant to Age Discrimination in Employment Act of 1967, as amended, Plaintiff is entitled to, and she seeks, an additional amount as compensatory and punitive damages equal to the sum of her lost wages or salary, benefits and/or other compensation denied or lost to her by reason of Defendant's violations of the ADEA, plus any interest she is entitled to for these causes, because Defendant's action were malicious and Defendant had no reasonable grounds for believing that its actions were not in violation of ADEA.

## VII. THIRD CLAIM FOR RELIEF – ACRA Claims

106. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

107. Plaintiff has timely filed a charge with the EEOC, received a right to sue letter, and has thus exhausted her administrative remedies.

108. Defendant engaged in unlawful employment practices at their facility in Poinsett County, Arkansas, in violation of Ark. Code Ann. §§ 16-123-101, *et seq.*

109. Specifically, and as detailed above, Plaintiff, who is a female, was terminated as a result of ongoing sexual discrimination.

110. Defendant employs male employees who were not subject to the same treatment that Plaintiff experienced during her employment.

111. Defendant employed a similarly situated male agent who was allowed to flex his hours by coming in late, taking extended lunch breaks, leaving early, conducting his personal business on the phone during the work day, and leaving on personal appointments throughout the work day.

112. Plaintiff was disparately treated as she was denied any opportunity to flex her hours by taking time off when she performed work for Defendant on her days off.

113. Defendant employed a similarly situated male agent who failed to complete his job duties, which Plaintiff was asked to complete by her supervisor.

114. Plaintiff was disparately treated as she was required to complete job duties a male coworker did not complete, which required Plaintiff to work longer hours to complete her own tasks.

115. Plaintiff observed her supervisor making misogynistic, offensive, and harassing statements about employees. Plaintiff observed her supervisor regularly hugging and massaging a female employee in their office.

116. These statements and actions by her supervisor made Plaintiff feel distressed and harassed based on her sex, which is female.

117. After making complaints about disparate treatment and harassment to numerous employees, Defendant failed to take any action to protect Plaintiff from ongoing harassment and disparate treatment.

118. Clemons, the Director of Plaintiff's District, told Plaintiff he thought Allen "had gotten better" because there hadn't been any issues recently, indicating other employees had complained about Allen in the past.

119. After Plaintiff made complaints, she was retaliated against by being isolated, ostracized, and ignored in her office, excluded from meetings, and left off emails she previously received.

120. At all relevant times, Plaintiff could perform the essential function of the position for which she was hired.

121. However, Plaintiff was constructively terminated from her position within the relevant statutory period.

122. The effect of the practices complained of above have been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex.

123. The unlawful employment practices complained of above were and are intentional.

124. The unlawful employment practices complained of above were done with reckless indifference to the federally protected rights of Plaintiff.

125. Pursuant to Arkansas Civil Rights Act, as amended, Plaintiff is entitled to, and she seeks, an additional amount as compensatory and punitive damages equal to the sum of her lost wages or salary, benefits and/or other compensation denied or lost to her by reason of Defendant's violations of ACRA, plus any interest she is entitled to for these causes, because Defendant's action were malicious and Defendant had no reasonable grounds for believing that its actions were not in violation of ACRA.

## VIII. PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff Brenda Cox respectfully prays that Defendant be summoned to appear and to answer herein as follows:

(A) A declaratory judgment that Defendant's practices violate Title VII of the Civil Rights Act of 1964, 42 U.S. Code § 2000(e)-2 and the related regulations;

(B)  A declaratory judgment that Defendant's practices violate the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101, *et seq.* and the related regulations;

(C)  A declaratory judgment that Defendant's practices violate Age Discrimination in Employment Act of 1967 and the related regulations;

(D)  Judgment for damages pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S. Code §2000(e)-2, *et seq.* for all compensation, compensatory, and punitive damages owed to Plaintiff;

(E)  Judgment for damages pursuant to Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101, *et seq.*, for all compensation owed Plaintiff for back pay and associated interest and fees;

(F)  Judgment for damages pursuant to Age Discrimination in Employment Act of 1967, for all compensation, compensatory, and punitive damages owed to Plaintiff;

(G)  An order directing Defendant to pay compensatory and punitive damages to Plaintiff along with pre-judgment interest, reasonable attorney's fees, and all costs connected to this action;

(H)  Such other and further relief as this Court may deem necessary, just and proper.

Respectfully submitted,

**Brenda Cox, PLAINTIFF**

WH Law
Jonesboro Office
870.888.4357

By:  Chris Burks (ABN: 2010207)
chris@wh.law

Mailing Address:
1 Riverfront Place, Suite 745
North Little Rock, AR 72114