IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

BRENDA COX                                                                                           PLAINTIFF

v.                                    No. 3:24-cv-15-DPM

BOARD OF TRUSTEES OF THE
UNIVERSITY OF ARKANSAS                                                                      DEFENDANT

ORDER

Brenda Cox has sued the University of Arkansas's Board of Trustees for many discrimination-based claims. The University moves to dismiss her complaint. In response, Cox has winnowed her claims to two Title VII violations: a sexually hostile work environment, and a constructive discharge. *Doc. 6 at 2 & 11*.

Whether Cox has alleged an objectively hostile work environment depends on the totality of the circumstances. *Warmington v. Board of Regents of the University of Minnesota*, 998 F.3d 789, 799 (8th Cir. 2021). The Court considers: "the frequency and severity of the discriminatory conduct, whether the conduct was physically threatening or humiliating, as opposed to a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance." *Ibid.* (quotations omitted). The Court construes Cox's complaint liberally, accepting her pleaded facts as true and drawing all

reasonable inferences in her favor. *Cook v. George's, Inc.*, 952 F.3d 935, 938 (8th Cir. 2020).

Cox worked as a family consumer science agent for the University of Arkansas System Division of Agriculture for thirteen months— from June 2022 to July 2023. She worked at the Division's extension office in rural Harrisburg, Arkansas. Her supervisor was Craig Allen. She says his sex-based discrimination pervaded their small office in several ways.

First, Cox alleges that Allen regularly used misogynistic slurs to demean others around the office. He often reminded Cox that he "hated" her female predecessor and that he "wouldn't piss on that bitch if she were standing in the road on fire." Doc. 1 at 6. Cox says these incessant comments were intended for her ears. On one occasion, when a male county employee was struggling to move furniture, Allen called him a "puss" and later boasted about it in front of her. *Ibid.*

Second, Cox says she was "forced to witness" Allen's "physically inappropriate" relationship with his female assistant on a regular basis. Doc. 1 at 9. According to Cox, it was commonplace for Allen to massage his assistant's shoulders, give her "bear hugs," bring her food, and give her special treatment. He even gave her a pistol at some point. All this, Cox says, caused her "significant distress" at work. Doc. 1 at 6.

Last, Cox claims that Allen treated her worse than her peer, a male agent named Jeffrey Works. She says Works regularly came in late,

took extended lunches, left early, conducted his personal business on the phone during work hours, and left work for personal appointments. Works bragged to Cox that he "regularly left early from September through November to participate in an urban deer hunt[,]" and that he once took a nap at his desk because he had gone duck hunting before work. *Doc. 1 at 4-5*. Cox says Allen repeatedly complained to her about Works's poor performance but never took corrective action. Rather, he made her finish Works's tasks, which often resulted in her working forty-plus hour weeks. On one occasion—after Cox had just worked a fifty-five-hour week, including a Saturday—she asked Allen for a day off. He denied her request and told her to "suck it up." *Doc. 1 at 4*. Pointing to Works, Cox claims Allen was less flexible with her hours because she's a woman.

In March 2023, Cox complained about Allen's behavior to the Division's district director, Jerry Clemons. Clemons wasn't surprised. He alluded to past issues with Allen, but said he thought Allen "had gotten better" because there hadn't been any recent issues. *Doc. 1 at 7*. Clemons relayed Cox's complaint to the Division's compliance officer, Barbara Batiste. Batiste opened an investigation shortly after.

According to Cox, the investigation only made matters worse. She says Allen and her coworkers began excluding her from meetings, leaving her off emails, and ignoring her around the office. In June 2023, three months after complaining, Cox informed Batiste that she hadn't

–3–

seen any changes in Allen's behavior and that she was now being "isolated and ostracized" at work. *Doc. 1 at 7-8*. Batiste told her that she was meeting with Allen about Cox's complaint but gave no status update on the investigation. Cox resigned two weeks later. She then filed a timely charge of discrimination with the Equal Employment Opportunity Commission.

\*

The University argues two grounds for dismissal of Cox's hostile work environment claim: failure to exhaust, and failure to state a claim. Although Cox didn't attach her EEOC charge to her complaint, she referred to it. "Plaintiff filed a timely charge with the EEOC, received a right to sue letter, and thus exhausted her administrative remedies." *Doc. 1 at 9*. Cox's charge, *Doc. 3-1*, is therefore embraced by her complaint. *Blakley v. Schlumberger Technology Corp.*, 648 F.3d 921, 931 (8th Cir. 2011).

The no-exhaustion defense is unpersuasive. The University first contends that Cox's charge didn't "identify a hostile work environment as a basis for her claim." *Doc. 4 at 6*. It's true that Cox didn't list a hostile environment in the form's discrimination-basis box. But her charge reads, in part:

> On or about March 2, 2023, I filed an internal complaint . . . stating that I felt discriminated against because of my sex and age. Since filing the complaint, I was subjected to on-going harassment and a *hostile work environment*.

–4–

*Doc. 3-1* (emphasis added). That sentence suffices. The University next argues that Cox's claim exceeds her charge's scope because her complaint includes harassment allegations from before March 2023. The Court disagrees. The charge, construed liberally, must give fair notice of alleged wrongs; it need not specify each and every supporting fact. *Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005). Cox's charge provides adequate notice of "on-going" hostile behavior by Allen that started before, and continued after, March 2023. And her claim reasonably relates to her charge. *Ibid.*

Accepting Cox's pleaded facts as true, and drawing all reasonable inferences in her favor, she has stated a plausible hostile work environment claim. The University is correct that some incidents—like Allen's denial of her time-off request and his comments to the male county employee—only happened once. But these incidents were neither "isolated" nor "sporadic." *Blomker v. Jewell*, 831 F.3d 1051, 1057 (8th Cir. 2016). They're examples that must be read in context. Cox alleges routine and regular unwelcome, sex-based harassment by her boss that spanned the thirteen months of her employment. *Compare Blomker*, 831 F.3d at 1054-55 (seven incidents involving two different men over three years); *Warmington*, 998 F.3d at 800 (sporadic incidents over "a number of years"). This harassment, Cox says, affected her work in several ways: She was constantly uncomfortable in the office; she had to work longer hours than

necessary; she had to do a peer's work; she was excluded from work-related meetings and emails; and she ultimately felt the need to resign. To be sure, Allen's conduct was neither physically threatening nor humiliating. *Warmington*, 998 F.3d at 799. And Cox pleads that, despite the circumstances, the quality of her work never suffered. Taking the record in the light most favorable to her, that outcome shows grit, not an empty claim. Considering all the circumstances, Cox has alleged a pattern of sex-based harassment that was sufficiently pervasive to alter the conditions of her employment.

That leaves Cox's constructive discharge claim. She must show two things here: that a reasonable person in her situation would find her working conditions intolerable; and that the Division intended to force her to quit. *Bell v. Baptist Health*, 60 F.4th 1198, 1203 (8th Cir. 2023). Cox hasn't cleared this high bar. She pleads no facts showing that the Division intended her to quit, or that it was reasonably foreseeable that she would quit. Her mid-investigation resignation was "contrary to her obligation not to assume the worst and not to jump to conclusions too quickly." *Brenneman v. Famous Dave's of America, Inc.*, 507 F.3d 1139, 1144-45 (8th Cir. 2007). The investigation was progressing slowly, but not so slowly that one could reasonably infer that it was a sham or that the Division wanted her out. Her constructive discharge claim will therefore be dismissed without prejudice.

\*   \*   \*

The University's motion to dismiss, *Doc. 3*, is denied as to Cox's hostile work environment claim; it's granted as to all other claims.

So Ordered.

*[signature]*
D.P. Marshall Jr.
United States District Judge

9 July 2024

-7-