# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### NORTHERN DIVISION

**BRENDA COX**                                                          **PLAINTIFF**

**v.**                              **No. 3:24-cv-15-DPM**

**BOARD OF TRUSTEES OF THE
UNIVERSITY OF ARKANSAS**                          **DEFENDANT**

## ORDER

Brenda Cox worked as a family consumer science agent at the University of Arkansas's agriculture division for thirteen months. She worked out of the Poinsett County extension office in Harrisburg, Arkansas. Her supervisor was Craig Allen, an agriculture agent and staff chair of the office. In July 2023, Cox quit her job. She sued the University's Board of Trustees, alleging that Allen discriminated against her based on her sex. The Court addressed the University's comprehensive motion to dismiss. *Doc. 11.* Her only remaining claim is for a sexually hostile work environment. The Court now has the benefit of a full record. The University seeks summary judgment, Cox a trial. When any material fact is genuinely disputed, the Court considers that fact in Cox's favor. *Van Dorn v. Hunter*, 919 F.3d 541, 544 (8th Cir. 2019).

\*

Whether Cox has made a case for the jury to decide about an objectively hostile work environment depends on the totality of the circumstances. *Sandoval v. American Building Maintenance Industries, Inc.*, 578 F.3d 787, 801 (8th Cir. 2009). The Court considers the "frequency and severity" of the conduct, if it was "physically threatening or humiliating" or a "mere offensive utterance," and if it "unreasonably interfered" with Cox's work performance. *Warmington v. Board of Regents of the University of Minnesota*, 998 F.3d 789, 799 (8th Cir. 2021).

Cox alleges that Allen used misogynistic language. Referring to Cox's female predecessor, he said he "wouldn't piss on that bitch if she were standing in the road on fire." *Doc. 21-1 at 24.* He often expressed his strong negative feelings about this former employee to Cox. Allen once called a male employee struggling to move furniture a "puss." *Ibid.* He made disparaging remarks about Cox's job position—it was "worthless." *Doc. 21-1 at 40.* He also ridiculed her degree in education, family, and consumer sciences—she "might as well get a degree in underwater basket-weaving or home economics." *Doc. 21-1 at 19.*

The Court must apply the law's "demanding harassment standards to filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Blomker v. Jewell*, 831 F.3d

–2–

1051, 1057 (8th Cir. 2016) (emphasis removed and quotations omitted). Behavior that is "vile or inappropriate" may still be insufficient. *Blomker*, 831 F.3d at 1058–59 (collecting cases). In *Warmington*, for example, a female university coach's sex-based harassment claim failed, despite a male head coach's reference to another female employee "as a c**t" in front of her, because many of the incidents of inappropriate behavior weren't directed at her and didn't involve actual touching or physically threatening conduct. 998 F.3d at 800. Here, Allen's name-calling wasn't directed at Cox. No physical touching occurred. His offensive comments were neither physically threatening nor humiliating. And, viewed in the context of Cox's thirteen-month employment, the comments weren't pervasive. *Compare Duncan v. General Motors Corp.*, 300 F.3d 928, 933–35 (8th Cir. 2002) (no severe or pervasive sexual harassment based on five harassing incidents over two years, including multiple occasions of improper touching, a proposition for a relationship, and a request to sketch a sexually explicit drawing).

Cox next argues that her work environment was hostile because of gender-based favoritism. The parties dispute how much time employees took off, if they were allowed to "flex" their time, and if Allen was less flexible with Cox's hours because she was a woman. She says a male peer (agriculture agent Jeffrey Works) got preferential treatment. On one occasion, Allen denied her request to take Friday off

without using leave after she had worked more than fifty hours the previous week.  But then Works bragged to Cox that he would be leaving early during hunting season without using his leave time.  Taking these disputed facts in in Cox's favor, however, they don't create an issue for trial because they don't amount to an objectively hostile work environment.  Cox describes one incident where her request to "flex" her time was denied.  Several months earlier, she did take some time off without using her leave.  *Doc. 21-1 at 12.*  She was allowed to work from home some, too.  *Doc. 21-1 at 34.*  At bottom, Cox has described a "frustrating work situation," but hasn't provided sufficient leave-related evidence to support a verdict that Allen's conduct unreasonably interfered with her performance.  *O'Brien v. Department of Agriculture,* 532 F.3d 805, 810 (8th Cir. 2008).

Though Cox dropped her disparate treatment claim earlier in the case, she argues hard that her heavy workload in comparison to Works's light workload was part of the sexually hostile environment at the office.  He got to nap occasionally, worked on church bulletins and such now and then, and sometimes warmed a chair instead of doing anything at all.  *Doc 21-1 at 16 & Doc. 21-4 at 2.*  Allen expected her to edit some of Works's written work.  She also had to winterize a park when Works didn't get that task done, plus clean up the fairgrounds even though they both served on the fair board.  *Doc. 25 at 6–7.*  All this is disputed, but the Court takes the record in Cox's favor at this point.

–4–

The University argues that this differing treatment doesn't go to whether the workplace was hostile based on sex. The Court disagrees. It's part of the totality of the circumstances. *Sandoval,* 578 F.3d at 801. This kind of discriminatory treatment—if sufficiently severe or pervasive—could "unreasonably interfere" with Cox's job performance. *Warmington,* 998 F.3d at 799. Though it would carry more weight on a disparate-treatment claim, preferential treatment in workload can help prove hostility toward women on the job. *E.g., Hall v. Gus Construction Co., Inc.,* 842 F.2d 1010, 1013–14 (8th Cir. 1988). The difficulty for Cox is two-fold, though. Her grit got her past all this; her work quality never suffered. More importantly, as vexing as Works's slacking was, taken as a whole it isn't severe enough to help support a hostile-environment jury verdict. Works's behavior, and Allen's refusal to address it, were "ordinary tribulations of the workplace[.]" *Blomker,* 831 F.3d at 1057.

Considering all the circumstances as a whole, and viewing the record when genuinely disputed in Cox's favor, Allen's conduct was offensive but not severe or pervasive enough to satisfy the demanding precedent on what counts as a sex-based hostile work environment. The University is entitled to summary judgment on Cox's claim. Motion, *Doc. 21,* granted.

So Ordered.

_____
D.P. Marshall Jr.
United States District Judge

23 July 2026